## CLULEE *v.* ADT.

---

PATENTS; INTERFERENCE; CONSTRUCTION OF CLAIMS.

1. In an interference the burden of proof is on the party to whom a patent was issued on an application filed after the filing of an application of the other party, although the latter, subsequent to the grant of the patent to his adversary, filed his application in issue as a division of his original application.

2. In an interference in which the issues were: "(1) In an eyeglass mounting, the combination with a support, of an operating arm pivotally mounted upon said support intermediate its length and provided in the rear of the support with a loop with the plane thereof in the direction of the length of the arm. (2) In an eyeglass mounting, the combination with a support, of an operating arm pivotally mounted upon said support intermediate its length and provided in the rear of the support with a loop with the plane thereof in the direction of the length of the arm and with its terminal extended transversely to the plane of the loop"— which were identical with the claim of the senior party, except that the word "loop" was substituted for the word "scroll," in order to embrace the construction of the junior party, and the only difference between the constructions of the parties was that in the construc-

tion of the senior party the loop end of the arm above the loop was bent downwardly and then laterally, where it was united to the edge of the nose pad, while in the construction of the junior party the end was bent upwardly and laterally to engage the pad, and the same adjustments were permitted in the two devices, both guards being of sheet metal, and the necessary adjustments being readily performed by the fingers of the user without the use of tools, it was *held*, awarding priority to the senior party upon the first count, and priority to the junior party upon the second count, that the word "loop" in the first count could not properly be construed as including the novel feature of the upward or downward bending of the loop in the senior party's device, as this additional bend formed no part of the loop, and to insert it in his claim had the effect of reading into it a limitation not called for to preserve its validity, and that therefore a device constructed by the senior party, and upon which the first count was readable but for such construction, embodied the invention defined by the issue (distinguishing *Rice* v. *Schutte*, 38 App. D. C. 175), but that, as the senior party's device showed the terminal of the loop extending parallel to the plane of the loop and riveted to an arm of the nose clamp, while count two required that the loop should have its terminal extended transversely to the plane of the loop, that count could not be properly read upon such device.

No. 1000.   Patent Appeals.   Submitted November 12, 1915.   Decided January 3, 1916.

Hearing on an appeal from a decision of the Commissioner of Patents in an interference proceeding.

*Reversed in part; affirmed in part.*

The facts are stated in the opinion.

*Mr. C. H. Duell, Mr. F. P. Warfield, Mr. H. S. Duell,* and *Mr. T. J. Johnston* for the appellant.

*Mr. Frederick F. Church* and *Mr. J. Willard Rich* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents awarding priority of invention to appellee, Leo F. Adt, on both counts of the issue. The issue reads as follows:

"1. In an eyeglass mounting, the combination with a support, of an operating arm pivotally mounted upon said support intermediate its length and provided in the rear of the support with a loop with the plane thereof in the direction of the length of the arm.

"2. In an eyeglass mounting, the combination with a support, of an operating arm pivotally mounted upon said support intermediate its length and provided in the rear of the support with a loop with the plane thereof in the direction of the length of the arm and with its terminal extended transversely to the plane of the loop."

The invention in issue is described in the brief of counsel for appellee as follows: "The subject-matter in controversy relates to eyeglass mountings of that type in which the lenses are united by a rigid bridge termed herein a 'support.' Near the opposite ends of the bridge and between the arched portions of the lenses are mounted two finger piece arms or levers extending transversely of the bridge and of the plane of the lenses, pivoted upon vertical pivots on the bridge so as to swing horizontally. The rear ends of the arms or levers bear nose pads or guards to engage the wearer's nose, and these portions are pressed toward each other by springs, while the forward ends of the arms or levers are adapted to be engaged by the wearer's fingers to separate the pads or guards in applying or removing the mounting from his nose. Mountings of this general type are very old in the art, and the subject-matter in controversy is the particular configuration of the rear portions of the arms or levers bearing the pads or guards, and between these pads and the pivots. The objects of the invention are to so form these arms that the pads can be readily adjusted in every direction to suit the facial characteristics of the wearer, without bending

the sheet metal of which they are composed, edgewise, or unduly straining the metal by short or sharp bends."

Adt's Eyeglass Mounting.

"In Adt's construction, the material of the finger arm or lever in rear of the pivot is bent downwardly and forwardly toward the pivot to form the loop 9, which opens forwardly, and then extends downwardly in the form of an arm 10 connected by a horizontal bend 11 to the forward portion or edge of the nose-engaging member on pad 12."

Clulee's Eyeglass Mounting.

"In the Clulee construction * * *, the rear end of the finger arm or lever is bent downwardly and forwardly to form the loop 19, corresponding to the loop or bend 9 in Adt's construction, and the lower end of this is bent upwardly and laterally and connected to the forward edge of the pad or guard 21. The only difference between the two constructions is that in Adt the loop end of the arm above the loop is bent downwardly

and then laterally, where it is united to the edge of the pad, while in Clulee the end is bent upwardly and laterally to engage the pad, and the same adjustments are permitted to the two devices, both guards being made of sheet metal, and the necessary adjustments being readily performed by the fingers of the operator without the use of tools."

Appellant, Stephen J. Clulee, filed his application October 20, 1910, upon which a patent was issued June 20, 1911. Appellee filed his application here in issue July 13, 1912, as a division of an application filed December 30, 1909. Since appellant's patent was issued while appellee's application was pending, the burden remains upon appellant as the junior party.

Appellee took no testimony, but relies upon his filing date as evidence of conception and constructive reduction to practice. Appellant offered in evidence an eyeglass mounting, the construction of which prior to the date of appellee's application is conceded. Therefore the case is narrowed to a determination of the question whether or not the eyeglass mounting shown in the exhibit embodies the invention as defined by the counts of the issue?

A drawing of appellant's exhibit is reproduced below:

Referring to this exhibit the Examiner of Interferences

said: "This mounting   *   *   *   differs from the structure
of the patent herein involved in having the bent portion of the
lower arm to which the nose guard is attached in a straight
downwardly directed terminal, instead of the inwardly and then
upwardly directed bend forming the scroll of this patent. To
the terminal of the exhibit mounting is attached, for a slight
pivotal movement, a transverse angle-shaped lug of the nose
guard. In the mounting shown in the present patent, the
scroll of the guard arm itself ends in a transverse terminal
integral with or rigidly attached to the nose guard, there being
therefore no pivotal movement between the arm and the nose
guard."

It is conceded that if the language of count one of the issue be
given the broad construction of which it is naturally suscep-
tible, it will read not only upon the exhibit, but upon other
devices disclosed in the prior art. These counts were taken
from the claims of appellant's patent without change, except
that the word "loop" was substituted for the word "scroll," in
order to embrace the construction of appellee, who bent the
end of his loop downwardly, instead of upwardly to form a
spiral or scroll. The novelty of the invention in issue resides
in this upward or downward bending of the end of the loop,
and the tribunals of the Patent Office, in order to sustain the
validity of the counts of the issue, have construed the word
"loop" as including this novel feature, defined by them as a
return bend. They, as well as counsel for appellee, rely upon
the case of *Rice* v. *Schutte,* 38 App. D. C. 175, where the
court said: "Courts will narrow the construction of a claim
where it is necessary to preserve its validity,—and in this pro-
ceeding we must assume that the issue is patentable,—but
limitations not called for cannot be read into a claim to save it
from destruction." In this case the court was construing the
scope of the term "breakdown connection," which was first
used in the art by Rice. The court held that the issue could
be read on to Rice's device with the utmost clearness, but
could only be read upon the device of Schutte with more diffi-
culty and by a broad construction of the term, not warranted

in the light of the prior art. But here the first count of the issue is easily readable upon the exhibit of appellant, as well as upon the devices disclosed in the applications of the respective parties, unless the word "loop" be construed as including the limitation that its end be bent either upwardly or downwardly. This additional bend forms no part of the loop, especially in appellee's device, and hence to insert it into the claim would not be the mere construing of it, but the reading into the claim of a limitation not called for to save it from destruction. We are therefore of the opinion that appellant's exhibit answers the requirements of the issue as defined in count one, and that appellant is entitled to an award of priority on this count.

But count two presents a different proposition, in that it is here required that the loop shall have "its terminal extended transversely to the plane of the loop." This element is not present in appellant's exhibit, which shows the terminal of the loop extending parallel to the plane of the loop and riveted to an arm of the nose clamp, thus rendering it incapable of the ease in adjustment possessed by the devices of the respective parties as defined by this count. Appellee therefore is entitled to an award of priority on count two.

The decision of the Commissioner of Patents is reversed as to count one of the issue, and affirmed as to count two of the issue. The clerk is directed to certify these proceedings as by law required.

*Reversed as to count one, and affirmed as to count two.*